## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DAVID KAY WIENS, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. CIV-06-1286-F |
| | ) | |
| M.D. DOCTOR ZEAVIN; MRS. PETRASH, | ) | |
| PA; MRS. GRISHAM,[1] HEALTH | ) | |
| SERVICES, *et al.*,[2] | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff is a federal prisoner appearing in this action *pro se*.  He brings this action

pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403

U.S. 388 (1971), and seeks compensatory and punitive damages for alleged violations of his

constitutional rights.

This action has been referred for initial proceedings consistent with 28 U.S.C. §

636(b)(1)(B) and (C), and the following motions are pending: (1) Defendants' Motion to

Dismiss and Brief in Support [Doc. #40] (Motion to Dismiss) as supplemented by

Defendants' Supplemental Motion to Dismiss (Supplemental Brief) [Doc. #50]; (2)

Plaintiff's Motion to Compel Production of Medical Records [Doc. #45]; (3) Plaintiff's

---

[1]This Defendant is identified as "Ms. Grismer" in the Special Report.  *See* Special Report [Doc. #39] at 2.

[2]Plaintiff also names "John Doe Federal and State Officials" as defendants.  These defendants have not been identified or served, and Plaintiff has made no allegations against any unknown individuals.  Therefore, all claims against the unknown defendants should be dismissed upon initial review for failure to state a claim upon which relief may be granted.  *See* 28 U.S.C. § 1915A(b)(1).

Motion for Request for Jury Trial [Doc. #47]; and (4) Plaintiff's Motion for Extension of

Time to Allow for Additional Discovery [Doc. #54].  An official from the Bureau of Prisons

submitted a Special Report [Doc. #39] as directed by the Court.  For the reasons set forth

below, it is recommended that Defendants' Motion to Dismiss be construed as a motion for

summary judgment[3] and that the Motion be granted.  It is recommended that Plaintiff's

pending motions be denied as moot.

## I.    Relevant Background

Plaintiff was incarcerated at FCI-El Reno from April 13, 2005, to June 28, 2006.  He

was incarcerated at the Federal Transfer Center in Oklahoma City, Oklahoma, from June 28,

2006, until his release from federal custody on February 9, 2007.  *See* Special Report [Doc.

#39] Exhibit 1.  Defendant Zeavin is the clinical director at FCI-El Reno, Defendant Petrash

is a Physician Assistant at FCI-El Reno, and Defendant Grismer is the Health Services

Administrator at FCI-El Reno.  *See* Special Report at 2.

---

[3]*See* Fed.R.Civ.P. 12(b) (where matters outside the pleadings are presented with a motion
to dismiss for failure to state a claim upon which relief can be granted, the motion "shall be treated
as one for summary judgment and disposed of as provided in Rule 56").  On July 16, 2007, this
Court advised Plaintiff of the applicability of Rule 12(b) and Rule 56.  This Court advised Plaintiff
that in opposing Defendants' Motion, he could not rely upon mere allegations in his pleadings but
must respond with counter-affidavits and/or other documents setting forth specific facts showing that
there is a genuine issue of material fact for trial.  *See* Order [Doc. #51].  Plaintiff responded by filing
two notices, a Notice of Filing a More Definite Statement of the Complaint for Mrs. Grismer [Doc.
#55] and a Notice of Filing an Objection that Calls for Speculation from MD Dr. Thomas Goforth
[Doc. #56].  Liberally construing these *pro se* filings, Plaintiff's notices and the documents attached
are construed as responses to Defendants' Motion.  Additionally, Plaintiff's responses to the Special
Report, included in Plaintiff's Motion for Request for Jury Trial [Doc. #47], and Plaintiff's Notice
of Filing Amended Complaint with Included Plaintiff's Response to Defendants' Motion to Dismiss
[Doc. #48] have been considered.

Plaintiff claims that the medical treatment he received while he was incarcerated at FCI-El Reno violated his Eighth Amendment right to be free of cruel and unusual punishment. The crux of Plaintiff's Complaint is that Defendants violated his Eighth Amendment right by prescribing too much Dilantin when Plaintiff's blood tests showed sub-therapeutic levels, by withholding Dilantin when his blood tests showed excessive levels of the drug, and by withholding medications (INH) originally prescribed to keep Plaintiff from developing tuberculosis before Plaintiff signed a form refusing further treatment with INH. Complaint at 2.

## II.  Analysis

### A.  Official Capacity Claims; Claims Against the United States and BOP

On June 28, 2007, Plaintiff filed a "Notice of Filing Amended Complaint with Included Plaintiff's Response to Defendants' Motion to Dismiss and Brief in Support." [Doc. #48] (Notice). This Court should construe the relevant part of Plaintiff's "Notice" as a motion to amend his Complaint and should deny the motion.[4]

Plaintiff seeks leave to amend his Complaint by adding two additional defendants, the Bureau of Prisons (BOP) and the United States of America (United States), by specifying that this action arises under *Bivens*, and by clarifying that he is suing the individual defendants in both their individual and official capacities. This Court recognizes that *Bivens* is the correct jurisdictional basis for Plaintiff's action. Amendment of the Complaint to add the

---

[4]This Court has also considered the Notice to the extent that it is responsive to Defendants' dispositive motion.

additional parties and official capacity claims would, however, be futile because claims against the United States, against the BOP, and against the individual defendants in their official capacities would all be barred by the doctrine of sovereign immunity.

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). Such consent may not be implied, but must be "unequivocally expressed." *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33-34 (1992); *United States v. King*, 395 U.S. 1, 4 (1969). The United States has not waived its sovereign immunity for constitutional tort claims. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) (holding that sovereign immunity precludes damage claims against the United States government for constitutional violations).

Moreover, sovereign immunity extends to governmental agencies such as the BOP and their employees, to the extent such employees are sued in their official capacities. Jurisdictional limitations allow a plaintiff to sue only the government officials responsible for the alleged constitutional violations in their individual capacities and not the federal agency where they are employed. *See id.* at 483-86 (*Bivens* does not imply cause of action against the federal government or its agencies); *Pleasant v. Lovell*, 876 F. 2d 787, 793 (10th Cir. 1989) (*Bivens* action is available only against federal agents sued in their individual capacities).

Because this Court lacks jurisdiction to consider constitutional tort claims against the United States, against BOP, and against the individual Defendants in their official capacities,

Plaintiff's "Notice" is construed as a motion to amend his Complaint, and the motion should be denied.

### B.      **Individual Capacity Claims**

The Eighth Amendment creates an obligation on the part of prison officials to provide adequate health care to inmates. *See Estelle v. Gamble*, 429 U.S. 97, 103 (1976).  To establish an Eighth Amendment violation based on inadequate medical care, a prisoner must satisfy "both an objective component and a subjective component." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (internal quotation marks omitted).  The objective component is that "the alleged harm . . . [was] sufficiently serious." *Id.* at 753.  The subjective prong of the deliberate indifference test requires the plaintiff to present evidence of the prison official's culpable state of mind.  The subjective component is satisfied if "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  The prisoner must also prove that the acts performed with the culpable state of mind caused substantial harm. *See Mata*, 427 F.3d at 745.  "The substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Id.* at 751 (internal quotation marks omitted).

A complaint that a physician has been merely negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth

Amendment. *Estelle*, 429 U.S. at 105-06.[5] Although a plaintiff may not like or agree with the treatment decisions made by prison staff, mere disagreement with the medical care provided is also insufficient to state a cognizable constitutional claim for relief under § 1983. Disagreements with the treatment provided by prison medical staff do not in themselves rise to the level of deliberate indifference necessary to show a violation of the Eighth Amendment. *See Perkins v. Kansas Department of Corrections*, 165 F.3d 803, 811 (10th Cir. 1999).

On September 21, 2006, in response to Plaintiff's administrative appeal to the BOP regarding his claim that he was not receiving adequate medical care, Harrell Watts, the Administrator of National Inmate Appeals for the BOP, succinctly summarized Plaintiff's complex medical history:

> Review of relevant portions of your medical record reveals a history of seizures, spinal cord tumor, degenerative disc disease, neuropathy, a positive PPD, and hepatitis C. The lesion in your spine was not cancerous, but did cause neurological deficits[,] and your condition is being monitored on a regular basis. You are primarily in a wheelchair, but are able to walk short distances. In addition, you are on two medications for pain management. In the past you have been on two anti-seizure medications. Lab values show significant fluctuations in your blood levels. Those medications have been discontinued[,] and your record documents that you have not had a seizure since August of 2004. Your liver disease has impacted the clinician's ability to manage some of your other problems. You were not able to tolerate all the

---

[5]Although Plaintiff states that Defendants have been deliberately indifferent to his serious medical needs, he also characterizes the treatment he received as "medical mal-practice," Complaint Attachment 1, and "gross negligence." *See* Doc. #55 at 2. Neither ordinary negligence nor even gross negligence, however, constitutes deliberate indifference to serious medical needs. *See Estelle*, 429 U.S. at 106 n. 14; *Berry v. City of Muskogee*, 900 F.2d 1489, 1495-96 (10th Cir. 1990) (negligence or gross negligence).

recommended doses of INH, and the fluctuations in you[r] lab work may reflect your liver's inability to process the anti-seizure medications.

Complaint Attachment 1.

As noted in the above grievance appeal response, Plaintiff suffers from several chronic medical conditions which complicated the Defendants' ability to treat him.  When Plaintiff arrived at FCI-El Reno, he was taking 300 mg. of Dilantin which had been prescribed for a seizure disorder.  *See* Special Report Exhibit 3 (Declaration of Dr. Thomas Goforth) at 1; *see also* medical records, Attachment A.[6]  Shortly after his arrival at FCI-El Reno, Plaintiff underwent a PPD skin test[7] the result of which was positive.  *Id.* Attachment B.

On April 27, 2005, Plaintiff underwent a blood test which indicated that the level of Dilantin in his blood was 5.9, a sub-therapeutic level.[8]  On May 9, 2005, Plaintiff's daily dose of Dilantin was increased to 400 mg.  *Id.* Attachment D.  By June 8, 2005, the level of Dilantin in Plaintiff's blood was 13.7, within the normal range.  *Id.* Attachment E.

On June 28, 2005, Plaintiff began taking INH medication.  *Id.* Attachment F.  INH, also known as isoniazid, is the antibiotic used to treat tuberculosis infection.  The drug is

---

[6]The medical records and other written materials referenced in this section are attachments to the Declaration of Dr. Goforth.

[7]According to materials given to Plaintiff to educate him about tuberculosis, the PPD skin test is used to determine whether a person has developed an immune response to the bacterium that causes tuberculosis.  A positive PPD test does not necessarily mean the person is experiencing symptoms of tuberculosis or that the person ever will develop tuberculosis.  Only ten percent of people with a positive PPD test develop the disease, even without treatment.  *See id.*  Attachment B at 2.

[8]Dr. Goforth states that therapeutic levels of Dilantin are between 10 – 20.  Special Report Exhibit 3 at 2.

administered through pills, one of which should be taken every day for six months.  INH has several potential side effects[9] including skin rash, upset stomach and liver disease, and even if a person completes the six-month regime, he could still develop the disease.  *Id.* Attachment B at 2-3.

During the time Plaintiff was taking INH, the medical staff at FCI-El Reno continued to monitor his Dilantin level.  On July 6, 2005, Plaintiff's Dilantin level was 14.5.  *Id.* at 2, Attachment G.  On August 3, 2005, his Dilantin level was 14.3.  *Id.*  Attachment I.

On August 18, 2005, Plaintiff complained of tremors.  The medical records contain a notation that Plaintiff's last seizure was the year before in August of 2004.  *Id.*  Attachment J.  Plaintiff complained of "tic" movements in his arms during his September 13, 2005 appointment.  *Id.* Attachment K.  Three days later on September 16, 2005, Plaintiff complained of falling and feeling unstable and dizzy.  At that point, the medical staff discontinued Plaintiff's INH medication and ordered several blood tests, the results of which showed a dramatic rise in the level of Dilantin.  *Id.* at 3, Attachment L.  Plaintiff's Dilantin level was over 40 – more than twice the upper limit of normal Dilantin levels.  *Id.* Attachment M.  The medical staff discontinued Plaintiff's Dilantin.  *Id.* Attachment N. Subsequent blood tests showed Dilantin levels at 24.03 on September 26, 2005, and 13.4 on September 28, 2005.  *Id.* Attachments O, P.  On October 3, 2005, the medical staff continued to withhold Plaintiff's Dilantin, and Plaintiff, himself, decided not to take the INH

---

[9]INH can increase the effects of Dilantin and exacerbate hepatitis C.  *See* Special Report Exhibit 3, (Declaration of Thomas Goforth) at 4.

medication again.  In a Request to Staff dated September 27, 2005, Plaintiff wrote, "Upon doctors diagnosis I wish to not ever be prescribed I.N.H. (T.B. Med.)." *Id.* Attachment Q at 1, 2.[10]

It is undisputed that Plaintiff has serious medical conditions.  It is clear, however, from a review of Plaintiff's medical record that the healthcare providers at FCI-El Reno monitored and treated Plaintiff's complex medical conditions regularly.  Defendants carefully monitored the levels of Dilantin in Plaintiff's blood.  When his blood tests showed sub-therapeutic levels of Dilantin, his healthcare providers increased his dosage.  When a skin test showed Plaintiff had been exposed to tuberculosis, Defendants administered an appropriate antibiotic as a prophylactic measure.  When Plaintiff's Dilantin levels increased above optimal levels, Defendants quit administering Dilantin, reassessed Plaintiff's neurological deficits, determined that Plaintiff had not experienced a seizure for more than a year, and permanently discontinued the prescribed Dilantin.  Defendants also quit administering the INH because of Plaintiff's high levels of Dilantin, because Plaintiff experienced serious side effects, and because Plaintiff himself requested cessation of the medication.  Based on this record, no issue of disputed fact exists material to Plaintiff's Eighth Amendment claim of deliberate indifference to his medical conditions.[11]

---

[10]The "Disposition" section of the form is signed by Defendant Petrash and indicates that Plaintiff signed a treatment refusal form on or about October 3, 2005.  *Id.*  Paradoxically, Plaintiff complains in another document that the medical staff withheld five doses of INH before Plaintiff signed the treatment refusal form.  *See* Doc. #55 at 10.

[11]Plaintiff's Motion to Compel Production of Medical Records [Doc. #45] and Plaintiff's Motion for Extension of Time to Allow for Additional Discovery [Doc. #54] both indicate that
(continued...)

Additionally, Plaintiff has not alleged that he suffered any actual injury resulting from the medical treatment he received at FCI-El Reno, much less shown that he has incurred substantial harm as required for an Eighth Amendment claim.   Plaintiff states only a hypothetical injury that could result from withdrawal of INH medication:

> A patient could be worse off, if the INH is taken erratically rather than regularly, because the bacteria could build up an immunity to the drug that would make active tuberculosis harder to treat, if the disease did in fact develop.

Complaint at 2.   Even if Plaintiff's apprehensions regarding the cessation of the INH medication prove true, however, it was Plaintiff, himself, who asked that INH no longer be prescribed for him, and the medical staff had quit administering the INH because of the serious side effects.

The record in this case shows, at best, a disagreement over medical treatment and speculative allegations of injury.   Summary judgment on Plaintiff's Eighth Amendment claims should, therefore, be entered in favor of Defendants.

---

[11](...continued)
Plaintiff seeks the production of his prior medical records from the Veterans Administration and medical documentation of his positive PPD test.   Plaintiff also requests discovery be allowed regarding the complete personnel files of the Defendants, all administrative remedy complaints against the Defendants and Plaintiff's own administrative appeal.   Plaintiff identifies no disputed factual issues, however, material to his Eighth Amendment claims of deliberate indifference that would be clarified by these records.   Further, it is undisputed that Plaintiff's PPD test was positive and there is no need for further documentation of the results beyond what is in the summary judgment record.   It is recommended that these Motions as well as Plaintiff's Motion for Jury Trial be denied.

## RECOMMENDATION

It is recommended that Defendants' Motion to Dismiss [Doc. ##40, 50] be construed as a motion for summary judgment and that judgment be entered in favor of Defendants. Any claims against the unnamed "John Doe Federal and State Officials" should be dismissed for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915A(b)(1).  Plaintiff's Notice [Doc. #48] should be construed in part as a motion to amend the complaint and should be denied.  Plaintiff's other pending motions [Doc. ##45, 47, 54] should also be denied.

## NOTICE OF RIGHT TO OBJECT

Plaintiff is  advised of his right to object to this Report and Recommendation.  *See* 28 U.S.C. §636.   Any objections should be filed with the Clerk of this Court by December  20th, 2007.  Plaintiff is further advised that failure to file a timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein.  *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of the issues referred by the District Judge and terminates the referral.

IT IS SO ORDERED this  30th  day of November, 2007.

_____
VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE